UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

CHRISTOPHER A. HENRY,

             Plaintiff,

- against -

DORA SCHRIRO,

             Defendant.

------------------------------------------------------- X

**MEMORANDUM OPINION AND ORDER**

10 Civ. 7573 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.  BACKGROUND

        Christopher A. Henry, incarcerated and proceeding pro se, brings this action against Dora Schriro, Commissioner of the New York City Department of Correction ("DOC").[1] Henry alleges that, while incarcerated at the DOC's Anna

---

[1]  The Complaint contains no allegations referencing Schriro or indicating how she violated the law or injured Henry. Thus, Henry's claim against Schriro must be dismissed. *Harris v. Westchester Cnty. Dept. of Corrections*, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) ("to state a claim for damages under § 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal'") (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). Henry has failed to name any municipal entity as a defendant, or to cite any law to support his claim for relief. However, because prisoner pro se complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they suggest," *Triestman v. Federal*

1

M. Kross Center, the DOC violated the Free Exercise Clause of the First Amedment by denying his requests for matzoh and grape juice, which he considers integral to his practice of Judaism.[2]  Henry claims injuries including, "malnurishment [sic] [and] permanent trauma,"[3] and seeks relief, including his desired provision of matzoh and grape juice, and $9,999,000,000 in (presumably punitive) damages.[4]  The DOC now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, DOC's motion is granted with prejudice.

---

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), I will interpret the Complaint as alleging municipal liability for violation of the Free Exercise Clause of the First Amendment.  *See* Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just.").  *See also Cinemotion NV v. Lorimar-Telepictures Corp.*, No. 86 Civ. 8673, 1989 WL 120083, at * 6 (S.D.N.Y., Oct. 5, 1989) (adding a defendant *sua sponte*, "in the interest of the efficient administration of justice"); *Zuk v. Gonzalez*, No. 5:07 Civ. 732, 2007 WL 2163186, at *2 (N.D.N.Y. July 26, 2007) (adding a proper defendant *sua sponte*, in the interest of judicial economy and in light of the plaintiff's pro se status); *Dockery v. Tucker*, No. 97 Civ. 3584, 2006 WL 5893295, at *7 (E.D.N.Y. Sept. 6, 2006) (adding the United States as a defendant *sua sponte,* in a FTCA claim brought by a pro se plaintiff); *Ciancio v. Gorski*, No. 98 Civ 0714E, 1999 WL 222603, at *1 (W.D.N.Y. Apr. 14, 1999) (substituting the proper defendant *sua sponte*, "in the interest of eliminating undue complication without affecting the substantial rights of the parties").

[2]   *See* Complaint ("Compl.") at 3.

[3]   *Id.* at 5.

[4]   *See id.* at 7.

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[5] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[6] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[7]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[8]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[9]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[5]     556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[6]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[7]     *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8]     *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[9]     *Twombly*, 550 U.S. at 564.

reasonable inference that the defendant is liable for the misconduct alleged."[10] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[11]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[12]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[13]

## III. APPLICABLE LAW

Section 1983[14] "does not create a federal right or benefit; it simply

---

[10]   *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[11]   *Id.* (quotation marks omitted).

[12]   *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[13]   *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[14]   42 U.S.C. § 1983.

provides a mechanism for enforcing a right or benefit established elsewhere."[15]  In order to state a claim under section 1983, a plaintiff must allege that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[16]

"[A]lthough prisoners do not abandon their constitutional rights at the prison door, '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system[.]'"[17]  "An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious."[18]  "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely

---

[15]  *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

[16]  *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004).

[17]  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)) (other citations omitted).

[18]  *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) (quotation marks and citations omitted).

held religious beliefs."[19]

The Supreme Court has held that a challenged prison regulation is judged "under a 'reasonableness' test less restrictive than that ordinarily applied"[20] – a regulation that burdens a protected right passes constitutional muster "'if it is reasonably related to legitimate penological interests.'"[21]

> Courts must evaluate four factors in making the reasonableness determination: [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.[22]

## IV. DISCUSSION

### A. Substantial Burden on a Sincerely Held Religious Belief

The DOC concedes that Henry sincerely believes that he needs

---

[19] *Salahuddin*, 467 F.3d at 275 (citing *Ford v. McGinnis*, 352 F.3d 582, 591 (2d Cir. 2003)).

[20] *O'Lone*, 482 U.S. at 349.

[21] *Id.* (quoting *Turner*, 482 U.S. at 89) (finding a regulation justified under *Turner v. Safley*, 482 U.S. 78 (1987), even though it precluded some Muslim prisoners from attending Friday prayers, because of officials' legitimate security objectives and the availability of other channels by which prisoners could exercise their religious rights).

[22] *Salahuddin*, 467 F.3d at 274 (citing *Turner*, 482 U.S. at 90-91).

matzoh and grape juice on a regular basis to properly practice his version of Judaism.  The DOC argues, however, that Henry has failed to allege that denial of such provisions "substantially burdens" his practice.  But for the purposes of this motion, I need not address the issue.  Even if Henry has pled a substantial burden, he has failed to show that the DOC's articulated justification for burdening his religious belief is unreasonable.

### B. Legitimate Penological Interests

The DOC's burden to furnish legitimate penological interests is "'relatively limited'; indeed it is merely one of articulation."[23]  While a court need not accept the interests proffered by a defendant, the DOC provides two legitimate interests for denying Henry matzoh and grape juice: (i) "reduc[ing] perceptions of favoritism and jealousy among inmates (and thereby reducing tension [and] maintaining good order of the jails)[,]" and (ii) "reducing the administrative burdens and costs associated with the purchase and preparation of individualized meals."[24]  As a penological goal, prison security is "beyond question" legitimate,

---

[23]   *Colliton v. Gonzalez*, No. 07 Civ. 2125, 2011 WL 1118621, at *3 (S.D.N.Y. Mar. 23, 2011) (quoting *Salahuddin*, 467 F.3d at 275).  *Accord Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 127-28 (1977) ( "prison officials need only testify to the legitimate penological interests behind the challenged conduct to meet their burden of proof").

[24]   Defendant's Memorandum of Law in Support of Motion to Dismiss at 8.

as prison security is "central to all other corrections goals."[25] Likewise, efficiently allocating a limited operating budget by minimizing unnecessary administrative costs is a legitimate penological goal.

### C. Reasonableness of Denying Henry Matzoh and Grape Juice

Thus, this motion hinges on whether denying Henry his matzoh and grape juice is reasonably related to the legitimate interests of promoting prison security and reducing administrative costs. With regard to the first and third factors set forth in *Turner v. Safley*, providing individualized meals to a single inmate might well foster an impression of favoritism, which could lead to jealousy and resentment among the inmate population, which in turn could cause tension and threaten prison security. Similarly, providing individualized meals to one or several inmates would involve a substantial increase in administrative costs, and would likely cause demands by other inmates for individualized meals, further increasing administrative costs.

The second *Turner* factor – the availability of alternative means of exercising the right to free exercise of religion – also favors the DOC. "As has already been made clear in *Turner* and *O'Lone*, 'the right' in question must be

---

[25] *Thornburgh v. Abbott*, 490 U.S. 401, 415, 418 (1989).

viewed sensibly and expansively."[26]  Thus, the second factor is not to be narrowly construed as pertaining to particular practices, such as having matzoh and grape juice.  Plaintiff concedes that he is generally free to practice Judaism and interact with fellow Jewish inmates; that he is provided with Kosher meals;[27] and that he is able to interact with a Rabbi.[28]

As to the fourth *Turner* factor, Henry fails to propose "ready alternatives" to the DOC providing him with matzoh and grape juice – such as deliveries of both, if permitted, by family, friends, or his community.  Thus, the DOC's denial of Henry's request for matzoh and grape juice is reasonably related to the legitimate penological interests of promoting prison security and efficiently allocating administrative costs.

## VI.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.  The Clerk of Court is directed to close this motion (Docket Nos. 16 and 20) and this case.

---

[26]    *Id.* at 417.

[27]    *See* 6/1/11 Food Service Portion Control Sheet, attached to Motion to Practice My Jewish Religion by Having Matzoh and Grape Juice Every Friday, in Opposition to Motion to Dismiss at 8.

[28]    *See* Compl. at 5.

SO ORDERED:

*[signature]*

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
      August 2, 2011

## - Appearances -

**Plaintiff (pro se):**

Christopher A. Henry
B&C# 8951000633
A.M.K.C.
18-18 Hazen Street
East Elmhurst, New York 11370


**For Defendant:**

Jeffrey Scott Dantowitz
Assistant Corporation Counsel
Office of the Corporation Counsel
100 Church Street
New York, New York 10007
(212) 788-0939